RUSSELL (BARTLETT v.). See Case No. 1,080.

## Case No. 12,153.

### RUSSELL v. BEEBE et al.

[Hempst. 704.] [1]

Circuit Court, D. Arkansas. April. 1855.

PUBLIC LANDS — PRE-EMPTION — JOINT TENANTS— FRAUD.

1. Public officers, when acting under the scope of their duty, must be presumed to have fulfilled every requisite which the discharge of their duty demands.

2. Rights of pre-emption cannot be acquired to lands whilst the Indian title to occupancy still remains.

3. But conceding the title thus acquired invalid, yet if A. and R. hold under it jointly, the acts of the former in destroying it, and subsequently acquiring a better title, and claiming exclusively for himself and adversely to his associate, will be considered as fraudulent as against R., and title will be decreed to him.

4. This case distinguished from that of Cunningham v. Ashley, 14 How. [55 U. S.] 377.

[This was a bill in equity by William Russell, against Roswell Beebe, George C. Watkins, Mary W. W. Ashley, executrix of Chester Ashley, William E. Ashley, Henry C. Ashley, and Mary A. Freeman.]

A. Pike, for complainant.

George A. Gallagher, George C. Watkins, and S. H. Hempstead, for defendants.

DANIEL, Circuit Justice. Between the case of Cunningham v. Ashley, 14 How. [55

1 [Reported by Samuel H. Hempstead, Esq.]

U. S.] 377, which has been referred to, and the case now under consideration, there are some differences of fact which materially distinguish them. In the former case the right of Cunningham was not impeached upon the grounds of the exemption of the territory from all claim from settlement and preemption, or of the absolute incompetency of the land-officers to receive proofs of pre-emption, or to issue patent certificates; but the impeachment of Cunningham's title rested upon the allegations that the individual from whom Cunningham claimed as assignee, never had, in truth, entitled himself by actual settlement, and that the certificate granted to the agent of Cunningham was signed by the receiver alone, when it should have been the joint act of both the register and receiver. The court, acting upon the principle repeatedly sanctioned by them, that public officers, when acting within the scope of their duty, must be presumed to have fulfilled every requisite which the discharge of their duty demands; or that at any rate in such cases the maxim applies, "Omnia rite acta donec probetur in contrariam," and especially as the receipt for the dues to the government was given by the officer authorized to receive those dues, it was proper to conclude that the proceedings were all regular, and had been concurred in by both the agents appointed to conduct them; disallowed the exception.

In the present case the impeachment of the complainant's title begins a step higher. It strikes at the competency of the parties. It alleges the absolute nullity of the origin of the title of the complainant, and as a consequence of that nullity, insists that such a title could never be transmissible to any person under any circumstances. True, it denies the fact of settlement by Lewis, but insists that conceding the fact of such a settlement, it was an intrusion merely upon the right of occupancy by the Indians, and upon the right, too, of the government, and absolutely void unless subsequently recognized and ratified by the latter. This is certainly an imposing aspect of this case, and if it rested simply and confessedly upon the allegations thus relied on, and was wholly unaffected by the acts of the parties and the relations they sustained to each other arising from their own acts, might, perhaps, be decisive of this controversy; for the interpretation placed by law-officers of the government seem quite explicit to the effect, that rights of pre-emption cannot be acquired to lands whilst the Indian title to occupancy still remains. But conceding this to be the law to its fullest extent, does it conclude the rights of the parties to this cause? It is not denied by the complainant that the defendant holds the legal title to the property in dispute. This is conceded, and is a main ground of complaint. The inquiries are, whether the defendant, after being united with the plaintiff in pursuit of what the complain-

ant certainly believed and what the defendant Ashley professed to believe to be the regular and legal acquisition of the property; after recognizing the legality of the acquisition by participating in the distribution of the property between himself and others standing upon the same grounds; after undertaking to perfect the title by possessing himself of what may be termed the muniments thereof, has he not by lulling the complainant into security by a reliance on his co-operation and aid, by a breach of trust and confidence, circumvented and deceived the complainant, and endeavored to obtain exclusively for himself advantages which his previous association with the plaintiff, and all his acts conjointly with the plaintiff, bound him to share with him? Such appear to be the legitimate inquiries presented by the pleadings and testimony of the cause, and if answered in the affirmative, it would seem to be unimportant whether the Indian title was extinguished or not, or whether or not the land was subject to pre-emption. For, suppose the Indian title to occupancy existed in full force, suppose the land was not subject to settlement; could these things justify the defendant after embarking bona fide with the complainant in an effort to acquire the land, after sharing it with him and making himself his agent for the completion of the title, in violating every relation he filled to the complainant, and in cutting him off from every benefit of their compact as evidenced by their acts as well as their language? Was he not bound, holding the receipts for the money paid in the complainant's name, to put him in possession of those documents to enable him to perfect his title if he could? Admitting the irregularities of the original entry, it is as probable that the government would confirm a title to a bona fide claimant under a pre-emption, though informal, especially where the property had been extensively improved, as that they would lavish it upon the holder of a floating warrant to the injury of those who actually held and had improved the land.

In this view of the case, the question whether the deeds from Ashley do or do not contain covenants for warranty of title, becomes one of little importance. Russell is not now suing upon a covenant of warranty. He is complaining of a fraud, and seeking protection against it; and in such a state of the case, the deeds from Ashley are conclusive to show that he held the property in common with Russell, and held it under the very title which Ashley subsequently attempted to destroy. Nay, the deed to the corporation of Little Rock implies all this; for no comprehensible meaning or purpose can be ascribed to that transaction except it be taken as an acknowledgment that Ashley had held the town under the title described from Murphy, and that it was the purpose of the grantor in that deed to assure and quiet the purchases of property under that title. It is, perhaps, unnecessary, and might be extrajudicial, to

express an opinion upon the validity of the patent beyond the right in opposition thereto claimed in this cause; but it would seem, were the question before the court as a general one, or were directly in point in the case, to reconcile with the law the entry of these floating warrants upon property not merely settled upon but extensively improved at a great cost; and it is manifest, from the assurances given by the defendants, that it was to enure to the benefit of all the occupants of property, and not to the exclusive benefit of Ashley and Beebe, and of those with whom they were in amity. Nothing can be more explicit than the declaration of the officers of the general land office, that they considered the petition and declared purpose of Ashley and Beebe as securing the right of all holders of property, and for that reason, and that only, regarded the grant to them as a virtual compliance with the law which protected settlers against the location upon their possession and improvements by floating warrants. The opinion of the court is designed to embrace only this cause and the parties regularly before it; and upon the consideration which it has been enabled to bestow upon the very voluminous papers in the case, it has been led to the conclusion that the patent possessed by the defendants, or under which they claim, should, as regards the complainant and the property embraced within his bill, be held as void; and as having been obtained in fraud of the rights of the complainant, and that the defendants should be decreed to assure to the complainant by proper and sufficient deeds, his title in and to said property. and to remove, so far as on them may depend, all obstruction to his possession to that property. Decreed accordingly.

[NOTE. The defendants appealed to the supreme court. The appeal was dismissed for want of jurisdiction, it being held that the decree entered was not a final decree. 19 How. (60 U. S.) 283.]

RUSSELL (BLUE v.). See Case No. 1,568.

RUSSELL (BUTLER v.). See Case No. 2,243.

RUSSELL (DRIGGS v.). See Case No. 4,084.

RUSSELL (ENGLISH v.). See Case No. 4,491.

RUSSELL (FAXON v.). See Case No. 4,707.